**INTERNATIONAL MOLDERS' AND ALLIED WORKERS' LOCAL UNION NO. 164, et al., Plaintiffs-Appellees,**

v.

**Alan NELSON, The Immigration and Naturalization Service, et al., Defendants-Appellants.**

No. 85-2745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1986.

Decided Sept. 11, 1986.

As Amended on Rehearing Dec. 1, 1986. Suggestion for En Banc Review Denied Dec. 1, 1986.

**550**

Alan L. Schlosser, ACLU, Morris J. Baller, Marron, Reid & Sheehy, Susan E. Brown, San Francisco, Cal., Charlotte Fishman, Berkeley, Cal., for plaintiffs-appellees.

Mark B. Stern, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before WRIGHT and FARRIS, Circuit Judges, and RHOADES,* District Judge.

EUGENE A. WRIGHT, Circuit Judge.

This action was instituted in April of 1982. Plaintiffs-appellees are a labor union, five employers and nine employees of Hispanic ancestry. They complain of the manner in which the Immigration and Naturalization Service (INS) conducted searches and made arrests in factories and other places where it believed illegal aliens were employed. Specifically, plaintiffs challenge the constitutionality of "factory surveys" occurring in northern California during the week of April 16, 1982, as part of "Project Jobs," a nation-wide enforcement action against undocumented aliens.

Four years have passed since the inception of this action, but it has not yet been brought to trial. In March 1984, plaintiffs moved for a preliminary injunction to prohibit INS factory searches absent either voluntary employer consent, unprovoked exigent circumstances or a search warrant identifying specific persons suspected of being illegal aliens. Eighteen months after the motion was filed, the district court granted the requested preliminary injunction. 643 F.Supp. 884. It denied a motion by INS requesting a stay pending appeal. INS timely appealed.

## STANDARD OF REVIEW

■ Our review of a motion for preliminary injunction is "very limited." *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir.1984).

A decision to grant a preliminary injunction "will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 752 (9th Cir.1982).

■ An order granting or denying a preliminary injunction will be reversed only for abuse of discretion.[1] *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980).

■ A preliminary injunction is warranted if the movant demonstrates either: "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips

---

* Of the Southern District of California.

1. An abuse of discretion will be found if the district court: (1) applied incorrect substantive law or an incorrect preliminary injunction standard; (2) based the decision on a clearly erroneous finding of a material fact; or (3) applied an acceptable preliminary injunction standard in a manner that results in an abuse of discretion. *Zepeda v. United States INS*, 753 F.2d 719, 724 (9th Cir.1983).

sharply in its favor." *Los Angeles Coliseum*, 634 F.2d at 1201.[2]

■ Factual findings in support of a decision to grant a preliminary injunction are reviewed for clear error. *Zepeda v. United States INS*, 753 F.2d 719, 725 (9th Cir. 1983). Legal issues underlying a decision to grant an injunction are reviewed *de novo*, as is a district court's finding that plaintiffs are likely to succeed on the merits of those issues. *Lopez v. Heckler*, 725 F.2d 1489, 1498 (9th Cir.1984), *vacated on other grounds*, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984).

■ In deciding a motion for a preliminary injunction, the district court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964). A grant of a preliminary injunction will not be reversed unless the district court failed to consider the relevant factors or committed a clear error of judgment. *Zepeda*, 753 F.2d at 725.

·ANALYSIS

I. *Introduction*

This preliminary injunction consists of 11 substantive provisions. INS focuses its challenge on the two provisions requiring that warrants specifically identify persons targeted in its factory searches. It also challenges the remainder of the injunction as an improper restriction on INS enforcement, arguing plaintiffs failed to show "systematic misconduct contrary to official INS policy."

II. *Propriety of Injunctive Relief*

The first issue confronting us is whether the preliminary injunction was warranted.

We conclude that the district court did not abuse its discretion in granting preliminary injunctive relief.

· ■ INS raises a weak argument that injunctive relief is unwarranted here because the evidence shows "merely sporadic violations of official policy by individual agents." The record supports the district court's finding of an "evident systematic policy and practice of fourth amendment violations" by INS. The extensive evidence of INS agents exceeding official policy can hardly be characterized as "[a]n ambiguous, isolated incident [not warranting] injunctive relief." *INS v. Delgado*, 466 U.S. 210, 218 n. 6, 104 S.Ct. 1758, 1764 n. 6, 80 L.Ed.2d 247 n. 6 (1984).[3]

Plaintiffs observe correctly that INS has raised no specific challenges to the detailed factual findings on which the district court based the injunction.

INS argues that injunctive relief should not have been granted because plaintiffs failed to show a "substantial risk of repetition of past incidents." The district court made an explicit finding that, absent an injunction, "plaintiffs are quite likely to suffer irreparable harm" from continued fourth amendment violations by INS. "[P]roof of past injury, especially of a repetitive character, is not immaterial to the issue of likely recurrence." *LaDuke v. Nelson*, 762 F.2d 1318, 1324 n. 8 (9th Cir. 1985), *amended on other grounds*, 796 F.2d 309 (9th Cir.1986).

■ INS is correct that courts are reluctant to enjoin law enforcement agencies entitled to "the widest latitude in the 'dispatch of [their] own internal affairs,' " *Riz-*

---

**2.** Although this formulation appears to state two separate tests, "in fact there is only one, best described as a continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *San Diego Comm. Against Registration and the Draft v. Governing Bd.*, 790 F.2d 1471, 1473 n. 3 (9th Cir.1986).

The critical element is the relative hardship to the parties. *Benda v. Grand Lodge of the International Association of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). "If the balance of harms tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Id.* The "irreducible minimum" showing of likelihood of success accepted by this court is either "a fair chance of success on the merits" or "questions ... serious enough to require litigation." *Id.* (citations omitted).

**3.** Ironically, INS cites with approval the portion of the district court's order which found that "it is not infrequent that [INS agents] violate the fourth amendment rights of workers."

zo v. Goode, 423 U.S. 362, 378–79, 96 S.Ct. 598, 607–08, 46 L.Ed.2d 561 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961)). However, the INS has "no discretion with which to violate constitutional rights." LaDuke, 762 F.2d at 1325. The district court's findings of fourth amendment violations were sufficient to support the decision to grant some preliminary injunctive relief.

### III. Restrictions on Entry Warrants

Next we must decide whether the specific provisions in the preliminary injunction order were proper and whether the terms of the injunction resulted from a proper application of substantive law.

### A. Specificity of the Entry Warrant

The INS contends that paragraphs two and three of the injunction[4] are invalid. It relies on the District of Columbia Circuit's decision in Blackie's House of Beef v. Castillo, 659 F.2d 1211 (D.C.Cir.1981), cert. denied, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982), for the proposition that a factory search may be based on a warrant that identifies no illegal aliens by name.

Blackie's rejected the contention that the INS open-ended warrant was comparable to the routine administrative inspection warrant upheld in Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). 659 F.2d at 1218. Instead, it defined a hybrid standard of probable cause applicable to INS enforcement. See 659 F.2d at 1222–25. A showing less than that required for criminal warrants was deemed appropriate because (1) Congress contemplated vigorous INS enforcement, including entries onto private premises to question aliens, and (2) INS activities are "not analogous to a criminal investigation" where the employer faces "no sanctions of any kind" for employing illegal aliens. 659 F.2d at 1218.

The court in Blackie's, while accepting a hybrid probable cause standard for INS entry warrants,[5] emphasized the need for "sufficient safeguards to assure that nothing impermissible would be left to the discretion of the INS agents." 659 F.2d at 1226. We have held that an application for a search warrant "must have sufficient specificity to enable the judge to make an independent determination of whether probable cause exists and to prevent the agents from having uncontrolled discretion to rummage everywhere in search of seizable items once lawfully with-

---

**4.** Paragraphs two and three of the injunction proscribe the use of "administrative warrants" to search for and arrest unnamed and otherwise unidentified persons suspected of being illegal aliens.

"2. Every INS warrant must particularly describe each suspect to be questioned or seized pursuant to the particularity requirement of the fourth amendment. There must be probable cause to believe each such person is an alien illegaly [sic] present in the United States. A warrant need not in every case identify the suspect(s) by name, but the warrant and its supporting affidavits must contain enough specific identifying information to assure that the search for that person is reasonably likely to result in finding that person.

3. A warrant may not provide that 'others' may be searched and seized, if such 'others' are unnamed or only conclusorily described by any supporting affidavits."

**5.** The district court found that a typical warrant authorized not only entry into and search of the premises, but seizures of persons "suspected of being aliens." Although, this finding is amply

supported by the record, the INS concedes that the warrants could properly authorize only entry into the workplace to question suspected aliens. Thus, it is unnecessary for us to decide whether the hybrid probable cause standard that Blackie's applied to entry warrants should apply to warrants that, on their face, authorize seizure of suspected illegal aliens.

Having now taken this position, INS cannot object to a permanent injunction that prohibits warrants to seize suspected aliens unless the warrants meet the particularity requirements applied to arrest warrants. To the extent the warrants authorize INS to seize employees, the Supreme Court's holding in Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), requires "probable cause particularized with respect to that person." Id. 444 U.S. at 91, 100 S.Ct. at 342 (emphasis added). "This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." Id.

in the premises." *United States v. Condo,* 782 F.2d 1502, 1505 (9th Cir.1986) (emphasis in original).

Here, the district court stopped short of requiring the INS to identify all suspected illegal aliens by name to obtain an entry warrant. But, it required the INS, through "the warrant *and its supporting affidavits,*" to provide information of sufficient specificity to assure that finding such persons is "reasonably likely." (Emphasis added).

At oral argument, we pressed plaintiff's counsel to propose a particularity standard for the INS to use in obtaining entry warrants for factory raids targeted at undocumented aliens. Counsel's inability to propose a workable standard reflects the difficulty of enforcing immigration laws where little documentary or descriptive information is available concerning suspected undocumented aliens.

The requirement to "identify the suspect(s) by name" or to provide "enough specific identifying information to assure that the search for that person is reasonably likely to result in finding that person" imposes an unreasonable and impractical burden on the INS. We agree with the District of Columbia Circuit that "warrants and accompanying affidavits [that] narrow down the field of potentially vulnerable persons to those employees whom INS agents might reasonably believe to be aliens," 659 F.2d at 1226, satisfy the requirements of the Fourth · Amendment even where the targeted persons are not identified by name.[6] The specificity that paragraphs two and three of the injunction order demand for entry warrants is not required under the Fourth Amendment.

B. *Restrictions on Consensual Questioning*

Paragraph two also requires that every INS warrant contain a specific description of each suspect to be *questioned* and be based on "probable cause to believe each such person is an [illegal alien]." An *arrest* requires probable cause to believe that the worker is an illegal alien, *see Tejeda-Mata v. INS,* 626 F.2d 721, 724–25 (9th Cir.1980), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982), and a worker may not be *detained* absent "reasonable suspicion of illegal alienage," *Benitez-Mendez v. INS,* 760 F.2d 907, 909 (9th Cir.1983). But, non-detentive questioning is permitted based solely on a reasonable suspicion that the person is an alien. *See LaDuke,* 762 F.2d at 1327. Such "consensual encounters" do not implicate the employee's Fourth Amendment rights. *Delgado,* 466 U.S. at 221, 104 S.Ct. at 1765.

The Court in *Delgado* stated that no detention occurs in a factory survey as long as INS agents' conduct has "given [workers] no reason to believe that they would be detained if they gave truthful answers to the questions put to them or if they simply refused to answer." 466 U.S. at 218, 104 S.Ct. at 1764. Where a worker merely "refuses to answer," *id.* at 216, 104 S.Ct. at 1763, but does not attempt "to flee or evade the agents," *id.* at 220, 104 S.Ct. at 1765, any "additional steps" taken by the agents must be supported by "some minimal level of objective justification to validate the detention or seizure." *Id.* at 216–17, 104 S.Ct. at 1763.

We find paragraphs two and three of the injunction order to have been improvidently entered. We strike these paragraphs from the injunction order because they exceed the particularity requirements of the Fourth Amendment and unduly restrict INS's ability to engage in consensual questioning.

Because of our conclusions as to paragraphs two and three of the injunction order, it is necessary also to strike para-

---

**6.** We recognize that the Supreme Court in *INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), did not expressly decide the particularity requirement for an entry warrant used in INS factory raids. Yet the Court made explicit reference to the agents' lawful presence in the factories based on warrants that did not identify *any* suspected illegal aliens by name. *See* 466 U.S. at 212, 217 n. 4, 104 S.Ct. at 1760, 1762 n. 4

graph five.[7] The procedures specified in paragraph five make no sense in the absence of a warrant specifically identifying the targeted workers. Moreover, the restriction on generalized questioning is inconsistent with the holding of *Delgado*, at least where the INS agents have a reasonable suspicion that those questioned are aliens. *See LaDuke*, 762 F.2d at 1327.

### C. *Provocation of Flight*

INS objects also to the restrictions in paragraph six of the injunction order which provides in part: "When agents have no warrant, but intend to obtain consent upon arrival at the worksite rather than ahead of time, they must not arrive or conduct themselves in a manner that would *foreseeably* provoke flight by workers, or that would leave a reasonable person with the belief that he had no choice but to consent to the raid." (Emphasis added).

INS contends that this provision is unreasonable and overbroad since flight by workers is virtually always a "foreseeable" consequence of INS agents' arrival at a factory.

We note that the court used the word "deliberately" in stating a similar restriction in paragraph seven. That appears to us to be a more understandable and enforceable standard than "foreseeable" provocation.

We direct that paragraph six be modified to substitute "deliberately" for the word "foreseeably."

### IV. *Scope of Injunctive Relief*

We construe the dispute over plaintiff employees' "standing" as an attempt by INS to limit the injunction to workplaces

of the named *employers* rather than the workplaces of the employee class. INS suggests that the district court lacked jurisdiction to enter an injunction order affecting non-party employers. Its reliance on *Zepeda*, 753 F.2d 719, is misplaced. This court in *Zepeda* limited the injunction "to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs." *Id.* at 727. That holding does not limit the court's power to bind the INS when it has necessary personal and subject matter jurisdiction. *Id.*

"[A]n injunction benefiting nonparties is permissible 'if such breadth is necessary to give prevailing parties the relief to which they [individually] are entitled.'" *Id.* at 729 n. 1 (quoting *Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 274 (5th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984).

We find that the provisions of the preliminary injunction properly apply to workplaces of the employee class. Such injunctive relief is not overbroad, does not needlessly benefit nonparty plaintiffs, and is necessary to provide effective relief to the prevailing party.

### V. *Evidentiary Hearing*

INS contends that the district court erred in granting injunctive relief "solely on the basis of affidavits or depositions." It contends that an evidentiary hearing was required to resolve disputed facts. *Dopp v. Franklin National Bank*, 461 F.2d 873, 879 (2d Cir.1972). Rule 65(a)(1), Fed.R. Civ.P., has been interpreted to mean that parties have a right to be heard in opposition to a motion for a preliminary injunction, and that the right includes presenting

---

7. Paragraph five of the injunction order provides:

"Each warrant must provide that the agents executing the warrant, before searching any work area, must show the warrant to an authorized company representative, and ask that representative to produce the suspect(s) named or described in the warrant. Before the suspects are produced, agents may position themselves at exits and question or detain any workers attempting to flee. If the repre-

sentative is unwilling or unable to produce those suspects within a reasonable time, agents may then enter the work area to search for the suspects. Such searches must be directed at finding the named or described suspects as quickly as possible, rather than for general questioning of the entire workforce. This does not preclude agents from questioning or detaining workers who attempt to hide or flee."

oral testimony when the pleadings and affidavits are conflicting. *Sims v. Greene*, 161 F.2d 87, 88–89 (3d Cir.1947).

■ We choose not to follow the *Sims* presumption in favor of evidentiary hearings. *San Francisco-Oakland Newspaper Guild v. Kennedy*, 412 F.2d 541, 546 & n. 6 (9th Cir.1969) (Presentation of many affidavits and the oral argument constituted "sufficient opportunity to present [the] case [opposing preliminary injunction] without using oral testimony.").

■ Where sharply disputed the facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate. *See Aguirre v. Chula Vista Sanitary Service and Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir.1976) (citing *SEC v. Frank*, 388 F.2d 486, 490–91 (2d Cir.1968)). But an evidentiary hearing should not be held when the magnitude of the inquiry would make it impractical. *Frank*, 388 F.2d at 490.

The language of Rule 65(a) does not require a purely technical rule on this point. One authority suggests:

> Such requirements as there may be for hearings in applications for preliminary injunctions must stem, therefore, from general concepts of fairness, the underlying practice, the nature of the relief requested, and the circumstances of the particular cases.

7 J. Moore, J. Lucas & K. Sinclair, *Moore's Federal Practice* ¶ 65.04[3] at 65–59 n. 12 (2d ed. 1986).

Here, some facts are in dispute, but the real problem involves the application of correct substantive law to those facts. The INS apparently never requested an opportunity to present oral testimony. In at least one circuit, failure to request an evidentiary hearing constitutes a waiver. *See Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 442 (2d Cir.1977).

■ INS has not been unfairly deprived of the chance to show opposition to the issuance of a preliminary injunction. The district court did not abuse its discretion in granting the preliminary injunction without an evidentiary hearing.

## VI. *Duration of Preliminary Injunction*

Finally, we consider the duration of this preliminary injunction. We note with concern the delay that has accompanied the dispute. At oral argument we asked counsel whether a trial date had been fixed or was reasonably foreseeable. We were given no encouraging assurances that the case would proceed to trial on the merits in the near future.

It is clear that plaintiffs have received all, indeed more than, the relief to which they are entitled. Having obtained this relief, they appear to have little or no incentive to press for a trial on the merits. We do not countenance such delay. This case should have been tried and decided long ago.

We do not suggest that the district judge was responsible for any of this delay because we suspect that the parties are to blame.

We have previously pointed out that we can assist very little in the final resolution of critical legal and factual issues until a *permanent* injunction is granted or denied. *Zepeda*, 753 F.2d at 723. Our observations in *Zepeda* apply here:

> Furthermore, in many cases, appeal of a district court's preliminary injunction order will result in unnecessary delay to the parties and inefficient use of judicial resources. We think it likely that this case, for instance, could have proceeded to a disposition on the merits in far less time than it took to process this preliminary appeal. The parties, apparently, have made no effort in the district court to finalize this litigation.... In addition, our disposition of this appeal will affect the rights of the parties only until the district court renders judgment on the merits of the case, at which time the losing party may appeal again. One properly may wonder whether this is an efficient use of limited judicial facilities.

*Id.* at 724 (citation omitted).

From statements made at oral argument, we concluded that this case had been unduly delayed and terminated the injunction to prevent further delay. Subsequent review of the record has convinced us that this conclusion was unwarranted.

It appears that discovery will be completed by May 1, 1987 and trial will commence later that summer. This schedule, while not ideal, is not unexpected in a case of this scope and complexity. The injunction will not be terminated on October 28, 1986.

The district court should ensure that this action proceeds to trial or other final resolution as rapidly as possible. If the district court, in its discretion, determines that plaintiffs are not prosecuting this action with all due diligence, it should dissolve the preliminary injunction.

We remand with instructions to modify the injunction as directed by this opinion.