**512**

Edgar T. NUMRICH, Ben and Jo Ann Bleich, Jay Bleich, William B. Borgeson, Richard T. Charlton, Shirley Harris, Laura Laubenthal Robert J. Laubenthal, Marion McCown, John P. Nelson, Patricia Numrich, Jack L. Rainey, Margaret Rainey, W. Boyd Smith, Mrs. W. Boyd Smith, Craig Vallely, and Kelly Waller, Plaintiffs,

v.

A.M. GLEASON, E.B. Galligan, John H. Geiger, Pacific Telecom, Inc., a Washington corporation, American Network, Inc., an Oregon corporation, CP National Corporation, a California corporation, Ford Aerospace and Communications Corporation, a Michigan corporation, and Price Waterhouse, a partnership, Defendants.

Civ. No. 88–140–MA.

United States District Court,
D. Oregon.

June 10, 1988.

See also, 123 F.R.D. 330.

Nicholas I. Goyak, Hanna, Urbigkeit, Jensen, Goyak & O'Connell, P.C., Portland, Or., for plaintiffs.

Barnes H. Ellis, Stephen L. Griffith, Joyce Ann Harpole, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for defendants Pacific Telecom, Inc., Gleason and Geiger.

Thomas A. Balmer, Mark A. Turner, Lindsay, Hart, Neil & Weigler, Portland, Or., for defendants E.B. Galligan and American Network, Inc.

Douglas M. Ragen, Julie R. Vacura, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant Price Waterhouse.

Roland F. Banks, Schwabe, Williamson & Wyatt, Portland, Or., for defendant Ford Aerospace and Communications Corp.

Michael James Lilly, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendant CP National Corp.

## OPINION

MARSH, District Judge.

Plaintiffs, current and former minority public shareholders of American Network, Inc., (AmNet) bring this action alleging securities law violations, Rackeeteering Influenced and Corrupt Organization Act violations (RICO) (18 U.S.C. § 1962), and state common law claims. Plaintiffs contend that since the investment of Pacific Telecom, Inc. (PTI) in AmNet in 1984, PTI and defendant Gleason, have directed and controlled AmNet for the benefit of PTI.

## PROCEDURAL BACKGROUND

This action was originally filed in U.S. District Court for the Western District of Washington in December, 1987. On January 13, 1988, plaintiffs moved for a preliminary injunction, restraining and ordering

defendants to (1) obtain an independent opinion as to the fairness of the proposed sale of AmNet to ITT; (2) correct AmNet's financial statements; and (3) adequately disclose all litigation in any proxy statement seeking approval of any sale of AmNet stock or assets.

On January 25, 1988, defendants responded to plaintiffs' motion by filing a motion for a Rule 16 conference. Defendants contended that at such a conference, it would be established that a hearing on plaintiffs' motion for a preliminary injunction would be "wasteful pretrial activity" for the reasons that (1) plaintiffs can show no irreparable harm; and (2) plaintiffs complaint seeks injunctive relief only in their sixth claim for relief which fails to state a claim upon which relief can be granted.

On February 2, 1988, this action was transferred to U.S. District Court for the District of Oregon. On February 8, 1988, plaintiffs filed a supplemental motion for preliminary injunction seeking an order rescinding indemnification of AmNet and PTI officers and directors. On April 1, 1988, defendants' motions for a Rule 16 conference were denied. Thereafter, defendants filed several motions for preliminary resolution of legal issues which are currently pending.

On May 24, 1988, plaintiffs moved for a temporary restraining order "temporarily restraining Defendants from holding the AmNet shareholders meeting scheduled for Wednesday, May 25, 1988." The shareholders meeting was scheduled to consider and vote upon a proposal to approve and adopt an agreement and plan of exchange between United States Transmission Systems, Inc. (USTS), a subsidiary of ITT Corporation, and AmNet. At the oral argument of the TRO motion, plaintiffs argued that the potential irreparable harm which would incurr if the shareholders approved the plan of exchange was (1) the loss of dissenter rights; (2) loss of derivative claims in *Guenther v. Pacific Telecom,* Civ. No. 86–1650; (3) tax loss; (4) loss of shareholder ability to question the fairness of the proposed transaction; and (5) loss of the going concern value of AmNet. Plaintiffs also conceded that the approval of the plan of exchange would frustrate their motion for preliminary injunction. Plaintiffs' motion for temporary restraining order was denied from the bench.

On May 27, 1987, Defendants E.B. Galligan and AmNet filed a supplemental response to plaintiffs' motion for preliminary injunction and supplemental memorandum regarding defendants' motion for preliminary resolution of legal issues. Defendants noted in this memorandum that the special meeting of AmNet shareholders was held on May 25, 1988, and that a majority of the shareholders approved the agreement and plan of exchange between AmNet and USTS. Moreover, defendants noted that the Articles of Share Exchange were filed with the Secretary of State of the State of Oregon on that date.

It is defendants' position that, pursuant to ORS 60.494(2), upon the filing of the Articles of Share Exchange, the share exchange took place. Accordingly, defendants contend that "because the exchange has taken place and the operations of AmNet and USTS are already being consolidated, the relief sought in plaintiffs' motion for a preliminary injunction cannot be granted." Defendants conclude that plaintiffs' motion for preliminary injunction is moot and, therefore, should be denied.

Plaintiffs argue that their motion for preliminary injunction is not moot and that "it is certaining within the Court's power to immediately hold a hearing to prevent a consolidation of operations pending the fair valuation of the company." Plaintiffs argue that if defendants are allowed to continue the consolidation, plaintiffs will be irreparably harmed in that they will be deprived of the opportunity to receive fair value for their AmNet shares.

## STANDARDS

To obtain a preliminary injunction, plaintiffs must show either (1) a likelihood of success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardship tipping in its favor. *First Brands Corp. v. Fred Meyer, Inc.,*

809 F.2d 1378, 1381 (9th Cir.1987); *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985); *Inglis & Sons Baking v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir. 1975). Although often discussed in the alternative, these tests represent the extremes on a single continuum. "The critical element is the relative hardship to the parties. If the balance of hardships tips decidedly toward the plaintiff, less likelihood of success on the merits is required." *Wilson v. Watt*, 703 F.2d 395, 399 (9th Cir.1983).

Plaintiffs correctly point out that "the usual procedure for resolution of a motion for a preliminary injunction is fairly straightforward: the motion and supporting papers are filed; opposing papers are filed; a hearing is scheduled at which legal argument and evidence are presented; a decision is rendered and an injunction either does or does not issue." Plaintiffs do not, however, contend that they have an absolute right to a hearing before this court may consider their motion.

Fed.R.Civ.Proc. 65, governing preliminary injunctions, is silent as to whether the moving party has a right to a hearing. Several courts, however, have denied injunctive relief without a hearing when the motion shows the lack of a right to relief, rendering a hearing pointless. *See e.g., SCM Corp. v. Zerox Corp.*, 507 F.2d 358, 363 (2d Cir.1974) (court did not err in refusing to conduct evidentiary hearing when plaintiff failed to make sufficient showing of irreparable harm); *see also Int'l. Molders and Allied Workers v. Nelson*, 799 F.2d 547, 555 (9th Cir.1986) (Rule 65(a)(1) does not presume evidentiary hearing); 11 Wright and Miller, *Federal Practice and Procedure*, § 2949 at 478 (1973).

## DISCUSSION

Defendants have presented several issues which may affect the ability of plaintiffs to receive a preliminary injunction. First, defendants argue that the motion for preliminary injunction is moot. Second, if the motion is not moot, it is defendants' position that this court should deny the motion without granting plaintiffs the right to proceed to a hearing because plaintiffs have failed to allege any injury other than money damages. I will address these contentions together.

It is undisputed that the majority of AmNet shareholders approved the agreement and plan of exchange between AmNet and USTS. It is also undisputed that the plan of exchange was filed with the Secretary of State of the State of Oregon on May 25, 1988. Consequently, it must be determined what effect, if any, this action has on the viability of plaintiffs' motion for preliminary injunction.

ORS 60.494(2) provides that unless a delayed effective date is specified, a share exchange takes effect when the articles of share exchange are filed. ORS 60.497 describes the effect of a share exchange:

(1) When a merger takes effect:

(a) Every other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases;

(b) The title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment;

(c) The surviving corporation has all liabilities of each corporation party to the merger;

(d) A proceeding pending against any corporation party to the merger may be continued as if the merger did not occur or the surviving corporation may be substituted in the proceeding for the corporation whose existence ceased;

(e) The articles of incorporation of the surviving corporation are amended to the extent provided in the plan of merger; and

(f) The shares of each corporation party to the merger that are to be converted into shares, obligations or other securities of the surviving or any other corporation or into cash or other property are converted and the former holders of the shares are entitled only to the rights

provided in the articles of merger or to their rights under this chapter.

(2) When a share exchange takes effect, the shares of each acquired corporation are exchanged as provided in the plan, and the former holders of the shares are entitled only to the exchange rights provided in the articles of share exchange or their rights under this chapter.

The relief sought by plaintiffs must be evaluated in light of the statute. As noted above, plaintiffs seek an independent fairness opinion as to the proposed sale of AmNet to ITT; a correction of AmNet's financial statements; adequate disclosure of all litigation in any proxy statement seeking approval of any sale of AmNet stock or assets; and the rescission of indemnification agreements for AmNet and PTI directors. The basis for this request, i.e., the alleged irreparable harm, is described in their original motion for preliminary injunction as follows:

> Without the Court's intervention at this stage, Defendants, through exercise of their voting power, will conclude a sale to ITT or another buyer without required safeguards to plaintiffs, and the sale will create irreparable harm by removing defendants from their position of responsibility to plaintiffs which now requires that they affirmatively correct past wrongs. (Plaintiffs' Memo. in Support of Motion for Prel. Injunction at 3).

> The testimony and exhibits will clearly show that there are only two choices available to AmNet at this time. First, because of the recorded losses of approximately $28 million per year, AmNet will become insolvent without an infusion of capital. Second, and related to this, AmNet has proposed to obtain such an infusion of capital by selling its shares or assets at vastly reduced prices. Such a sale could irreparably harm Plaintiffs if it is not evaluated in a fair and independent manner. (*Id.* at 8).

> The PTI defendants have never accurately described the material facts surrounding the misstated AmNet financial statements and the discovery of the error. It is clear that AmNet will be issu-

ing another Proxy Statement for the proposed ITT sale. These omissions should not be allowed to again mislead shareholders as this could result in additional damage to plaintiffs. (*Id.* at 26).

Clearly, the above alleged irreparable harm is moot in the sense that a preliminary injunction would not prevent or remedy it. Because the plan of exchange is complete, an independent fairness opinion, if one has not already been rendered, will not prevent any alleged harm caused by the exchange. Any harm caused by the selling of shares or assets at "vastly reduced prices" can be remedied if plaintiffs prevail in the underlying action. Because the plan of exchange has been approved by the shareholders, any alleged misleading statements in the proxy seeking approval cannot be remedied by a preliminary injunction. The rescission of AmNet and PTI director and officer indemnification agreements is irrelevant to the prevention of the above described harm.

In plaintiffs' response to Defendants Rule 16 motions, plaintiffs identify the potential irreparable harm as follows:

> If Defendants are not now ordered to obtain a fairness opinion, several types of harm, which are incapable of monetary quantification, will result. For example, it is very likely that AmNet's assets will be severely undervalued. AmNet's derivative claims against PTI, which is currently being litigated in the derivative action in Oregon, may well be its largest asset. While defendants are in control of the corporation, such a claim will never receive proper evaluation without an independent fairness opinion. (Plaintiffs' Response to Defendants' Rule 16 Motions at 10).

> It is undisputed that irreparable harm is presumed where there is a possible threat of bankruptcy. (*Id.* at 14).

> Related to this threat of insolvency are the losses that will be suffered by Plaintiffs which are not capable of a definitive calculation. For example, if AmNet's claims against PTI are not pursued, then the shareholders' complete damages will

never be measured. Defendants are currently attempting to block the derivative claims asserted in the derivative action in Oregon. If the derivative action is dismissed, and PTI directs the sale of AmNet with a provision preventing ITT or another successor from pursuing such claims against PTI after the sale, then AmNet shareholders will never receive fair value in any proposed buy-out. (*Id.* at 15)

This case is not simply a dispute over money as Defendants suggest. The ripple effect of false financial statements in a publicly traded company are incapable of monetary quantification. The valuation of AmNet shares, a good part of which is based upon its financial statements, has a direct effect on the valuation of other publicly traded companies in the telecommunications field. (*Id.* at 16–17).

As noted above, a fairness opinion at this time will not prevent any potential irreparable harm. The potential of bankruptcy was prevented by the plan of exchange not enhanced. In fact, one reason this court denied plaintiffs' motion for a temporary restraining order was that absent the exchange, the evidence indicated that AmNet would be forced into bankruptcy. Any opposition by defendants to the *Guenther v. Pacific Telecom* derivative action, is irrelevant to the present case and must be addressed by plaintiffs' counsel in that action. Finally, as to any impact on the valuation of other publicly traded companies, the presentation and approval of the plan of exchange has most likely produced any impact that can be expected. Consequently, any such harm would not be remedied by the injunctive relief requested by plaintiffs.

In opposition to defendants' motion for preliminary resolution of legal issues, plaintiffs characterized the potential irreparable harm as follows:

> [T]he relief sought in the Complaint would be seriously threatened if the proposed sale to ITT were to go forward without the safeguards sought by Plaintiffs in their motion for a preliminary injunction. (Plaintaiffs' Response to Mo-

tion for Preliminary Resolution of Legal Issues at 5).

AmNet's pending insolvency in itself constitutes an irreparable injury. (*Id.* at 10).

Neither of these contentions raise any issues not disposed of above.

In plaintiffs' most recent responsive memorandum regarding their motion for preliminary injunction, they contend that even though the plan of exchange has been approved, the potential irreparable harm of being deprived of the opportunity to receive fair value for their AmNet shares remains. Plaintiffs argue:

> Because Defendants have refused to seek other offers for AmNet, it may be difficult to later determine a fair value for the company. Plaintiffs' damages thus are incapable of a complete calculation. As previously noted, in such cases, courts will allow preliminary relief."

Plaintiffs correctly state that courts have found irreparable harm where the calculation of monetary relief would be difficult or impossible. *See,* 7 *Moore's Federal Practice,* § 65.04[1] n. 64 (2d ed. 1988). Plaintiffs, however, have made no such showing. Moreover, none of the relief sought in plaintiffs' motion for preliminary injunction would remedy this alleged difficulty, i.e., a fairness opinion, ordered at this time, would not aid the calculation of plaintiffs' damages at the time of trial any more than if an expert later evaluate's the value of AmNet based on the facts as they existed at the time of the exchange.

Consequently, I conclude that the consummation of the plan of exchange between USTS and AmNet has rendered plaintiffs' preliminary injunction moot. Accordingly, plaintiffs' motion for preliminary injunction # 40 and defendants' Motions For Preliminary Resolution of Legal Issues # 167, # 174, # 177, # 191 are denied as moot.