ORRICK, Senior District Judge,
concurring in part and dissenting in part.
I concur with the majority’s holding that appellants have standing to bring this action.
I respectfully dissent from the rest of the opinion.
The majority today holds that a district court, after making findings of fact based upon voluminous documentary evidence, has no power to enter a preliminary injunction[1] against a local law enforcement agency without holding a full-dress eviden-tiary hearing. This cannot be the law and, in my opinion, is not the law. The majority is only able to reach this surprising and flawed conclusion by ignoring the standard to be observed by this court in reviewing preliminary injunctions, and by blurring the distinction between preliminary and permanent injunctions.
The copious record submitted to the district court is replete with shocking allegations supported by declarations. As recited by the majority, plaintiffs brought forward evidence to show unlawful detentions and searches, beatings, shootings, terrorist activities, and destruction of property. More specifically, the declarations included evidence that black and hispanic men were repeatedly arrested without cause and severely beaten by deputies at the Lynwood station, the County jail, and the “Operations Safe Streets” trailer, using guns, flashlights, fists, clubs, boots, a brick wall, and an electric Taser gun to inflict injuries that often required medical treatment and left some victims hospitalized. The declarations recounted allegations of torture, such as deputies holding a gun to a suspect’s head and threatening to shoot, or actually pulling the trigger without discharging a bullet, and allegations of illegal forced entry into residences, followed by a ransacking of the premises under the guise of a search.
The majority correctly measures this record by the standard set in Rizzo v. Goode, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976), which overturned a permanent injunction against a municipal police department when plaintiffs failed to establish a causal connection between the alleged incidences of police brutality and a policy or plan of the defendant department, sufficient to show that the alleged “pervasive pattern of intimidation flowed from an intentional, concerted, and indeed conspira-, torial effort to deprive the [victims] of their [constitutional] rights.” Measured by that standard, the record in this case overwhelmingly supports a finding that plaintiffs will probably succeed at trial in proving a pervasive pattern of unlawful conduct. The finding of a causal connection is supported because (1) unlike in Rizzo, several of the deputies alleged to have participated in the misconduct are named defendants, and (2) there are allegations that senior officers in the department knew of the abuse and of the existence of a neo-Nazi, white supremacist gang composed of Lynwood station deputies. At a minimum, this record containing evidence showing a pervasive pattern of unlawful conduct rising to the level of a departmental policy justifies a preliminary injunction commanding the deputy sheriffs at the Lyn-wood station to follow their own rules and to submit monthly reports on complaints of the use of excessive force.
Instead, faced with this evidence, the majority reverses the district court’s decision for failure to hold an evidentiary hearing and make “specific” factual findings because it finds “diametrically opposing declarations” in the record. In so doing, the majority has overstepped this court’s power as a reviewing court.
Rule 52(a) of the Federal Rules of Civil Procedure provides that “[findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.” (Emphasis added.) The district court has made findings of fact, on which it based its legal conclusions leading to its preliminary injunction order. The majority reverses the district court because no “specific findings [were made] to support the district court’s general conclu *513 sion” that there is a link between policy makers and the injuries suffered. This characterization of the district court’s findings is misleading. The district court specifically found that plaintiffs who were charged with crimes after they were allegedly brutalized were charged “pursuant to an unwritten Sheriffs Department policy of charging a person injured in the course of a routine stop.” Findings of Fact, 114 (emphasis added). Further, the district court specifically found that “departmental policy makers” knew that Lynwood deputies were members of a neo-Nazi, white supremacist gang. Findings of Fact, 117. The district court also specifically found that the evidence presented by “plaintiffs is more credible than that presented by the defendants.” Findings of Fact, H11. There is no basis for the majority to make a de novo review of the record and, because it is troubled by conflicting declarations, despite the fact that the district court specifically found plaintiffs’ evidence to be more credible, to require an issue-by-issue resolution of each evidentiary conflict in the record.
Such a searching review is inappropriate under Rule 52(a) of the Federal Rules of Civil Procedure and is especially inappropriate when the court is reviewing a preliminary injunction. A preliminary injunction is just that — preliminary.
As Chief Judge Wallace points out in Zepeda v. United State Immigration & Naturalization Service, 753 F.2d 719, 724 (9th Cir.1983) (citations omitted) (emphasis added):
Review of [a preliminary injunction order] is much more limited than review of an order granting or denying a permanent injunction____ Review of factual findings at the preliminary injunction stage is, of course, nontestimonial record available to the district court when it granted or denied the injunction motion.
In Hunt v. National Broadcasting Co., 872 F.2d 289 (9th Cir.1989), this circuit reiterated the point made in Zepeda. The Hunt opinion noted “the nonintrusive nature of our review of the preliminary injunction order” and discouraged appeals of future preliminary injunction orders by its speculation about whether such appeals represent “ ‘an efficient use of limited judicial facilities.’ ” Id. at 293 (quoting Zepe-da, 753 F.2d at 724). Keeping in mind that this is a preliminary injunction, this court must review these specific findings under the clearly erroneous standard.
' The district court’s findings of fact, though conclusory, are “plausible in light of the record viewed as a whole,” even though necessarily “based on physical or documentary evidence” and "inferences from other facts.” Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The efforts of both sets of defendants to convince this court that a mistake has been committed are tantamount to urging this court to “weigh[ ] the evidence differently”-than did the district court. Bessemer, 470 U.S. at 574, 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Under Bessemer, this court is not empowered to do so. Given the evidence in the record to support these findings of fact, there is no basis for the holding of the majority, which does not commit itself to any standard of review that the findings are clearly erroneous.
The majority, apparently having failed to consider the admonition of Chief Judge Wallace in Zepeda regarding review of preliminary injunctions, or the clear statement of Rule 52(a) of the Federal Rules of Civil Procedure, instead, in essence, reviewed the findings of fact de novo, and, putting itself in place of the district judge, finds them wanting in “specificity.” It thus reverses the preliminary injunction, and directs the district judge to conduct an evi-dentiary hearing and explicitly resolve the factual disputes in the record. Not only is this result a misapplication of the standard of review, but the majority has eliminated the distinction between a permanent and a preliminary injunction.
This circuit has already rejected a presumption in favor of evidentiary hearings before deciding preliminary injunction motions. International Holders’ & Allied Workers’ Local Union, No. 164 v. Nelson 799 F.2d 547, 555 (9th Cir.1986). Instead, this circuit has stated: "[A]n evidentiary *514 hearing should not be held when the magnitude of the inquiry would make it impractical.” Id. (emphasis added); see also United States v. Oregon, 913 F.2d 576, 582 (9th Cir.1990) (citing International Holders’ and rejecting an evidentiary hearing before approving consent decree when facts are “complicated”). The paper record on which the district court based its findings of fact indicates that any evidentiary hearing would be of an impractical magnitude. The parties will have the opportunity for a full evidentiary hearing at trial before any permanent injunction will issue. To require a preliminary full-dress hearing before trial disserves the values this court sought to uphold in Zepeda, that is, judicial efficiency, discouraging appeals of preliminary injunctions, and swift response to preliminary injunction requests. 753 F.2d at 724.
As well as reviewing the findings of fact for clear error, this court must determine whether the district court’s decision to grant a preliminary injunction based on those findings was an abuse of discretion. Hunt, 872 F.2d at 292. The district court abused its discretion if it failed to apply the correct legal standard, misapprehended underlying substantive law, or made clear error in judgment. Id. The district judge clearly applied the correct legal standard and understood the substantive law on which a court must base its discretionary decision to grant a preliminary injunction. The conclusions of law cite our opinions in Vision Sports, Inc. v. Melville Corp., 888 F.2d 609 (9th Cir.1989), and Chalk v. United States, 840 F.2d 701 (9th Cir.1988), setting out the well-established law of preliminary injunctions. Conclusions of Law, MI 2, 3. Recognizing that the moving party must show either a combination of probable success on the merits and the possibility of irreparable harm or serious questions requiring litigation and the balance of hardships tipped in its favor, Vision Sports, 888 F.2d at 612, the district judge specifically concluded that plaintiffs established probable success on the merits and irreparable harm. Conclusions of Law, MI 4, 5. He also balanced the hardships and found that the irreparable harm to plaintiffs, should the violations of departmental rules be allowed to continue, far exceeded any possible harm to defendants caused by requiring them to follow their own rules and, further, that the preliminary injunction would serve the public interest. Conclusions of Law, MI 6, 7. Applying the correct legal standard to his factual findings that plaintiffs’ evidence is more credible than defendants’ evidence and that the harm is current and on-going (Findings of Fact MI 10, 11), the district judge certainly did not make a clear error of judgment when he ordered the preliminary injunction.
The majority focuses on the substantive question of whether plaintiffs will be able to prove a causal connection between departmental policy and plaintiffs’ injuries as required by Rizzo, and on the substantive scope of the preliminary injunction. The former concern is ill-founded and the latter does not necessitate reversal.
The majority’s inquiry into the causal connection between departmental policy makers and plaintiffs’ injuries is premature, except as it concerns plaintiffs’ ability to meet the test for preliminary injunction, i.e., probable success on the merits1 or serious questions requiring litigation. This record contains declarations from a great number of plaintiffs, witnesses, and defendants, supporting the findings of racially motivated violations of civil rights and use of excessive force. The district court was entitled to draw the natural, unavoidable, inference that such renegade behavior as is alleged here could not take place without the approval of policy makers[2] and, therefore, that plaintiffs had shown probable success on the' merits. In any event, as discussed above, to support the grant of a preliminary injunction, there need only be serious questions deserving of litigation and a tipping of the balance of hardships in *515 favor of the moving party. The evidence of a link between departmental policy makers and plaintiffs’ injuries creates such serious questions and, as also discussed above, the balance of hardships clearly tips in plaintiffs’ favor.[3]
Again, I must reiterate that this appeal concerns a preliminary injunction, not a permanent injunction as at issue in Rizzo.[4] The majority’s citation to Orantes-Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir.1990), is inapplicable because that case involved a permanent injunction subject to much closer scrutiny. . Here, without doubt, the balance of hardships tips sharply in favor of plaintiffs. Therefore, plaintiff need only demonstrate that there is a “serious question” as to this issue deserving of litigation. The findings of fact made below certainly meet that test.
The majority also justifies its reversal on the overly broad geographic and substantive scope of the injunction. At the urging of appellants, the district court expanded the geographic scope of the preliminary injunction to cover the entire Los Angeles County Sheriff’s Department. This expansion was granted to accommodate the defendants. There is, however, no support for such a vast decree. I agree that the preliminary injunction should be limited to deputy sheriffs operating in the jurisdiction of Lynwood substation. Such a limitation can easily be placed on the injunction by way of our final order, however, without vacating the district court’s preliminary injunction. I am not overly concerned by the administrative difficulties this creates for the Sheriff's Department. The preliminary injunction is limited to policies “regarding the use of force and procedures for conducting searches.” I believe this limitation is crucial. In situations involving the use of force against, or searches of, citizens, rife as they are with the possibility of dangerous and violent confrontations between deputy sheriffs and the public, it should not be too much to ask that deputy sheriffs comply with department policies and regulations.
The original proposed order submitted by plaintiffs expanded upon defendants’ normal policies and procedures in significant respects. Rather than interfere with established procedures and policies, the district court instead simply required defendants to comply with the policies already established regarding use of force and searches. This is not a burdensome preliminary injunction by any standard. Indeed, if defendant’s arguments are to be believed, they are already in full compliance with these policies. The district court, however, did not specify precisely which policies and procedures defendants must comply with or face the contempt powers of a federal court. The majority concludes that the preliminary injunction violates the specificity requirement of Rule 65(d) of the Federal Rules of Civil Procedure.
I agree that the policies to be followed by defendants must be specified more particularly. Such minor amendments, however, do not require that the preliminary injunction be vacated. We should follow our precedent set in Davis v. City & County of San Francisco, 890 F.2d 1438, 1450-51 (9th Cir.1989), in which we approved an injunction incorporating San Francisco Fire Department’s rules “already binding upon the officers of the SFFD,” and by separate order required the district court to specify which policies it intended the defendants to follow. The Davis court noted that this circuit “has not taken a rigid approach to Rule 65(d)” and further explained that the “primary purpose of Rule 65(d) is to assure adequate notice to parties faced with the possibility of contempt.” Id. at 1450. The Davis court specifically noted that “[i]t is unlikely the officers could argue they were unaware of these rules.” Id. Likewise *516 here, the sheriffs deputies cannot contend that they are unaware of their own policies on force and searches. Indeed, defendants boast that “sheriffs deputies are thoroughly and repeatedly trained with respect to proper escalation of force.” Where the primary purpose of Rule 65(d) has been accomplished, vacating the preliminary injunction would cause undue delay and is unnecessary.
There is no doubt that a federal court should be cautious in granting an injunction against state law enforcement agencies. See Rizzo, 423 U.S. at 380, 96 S.Ct. at 608 (discussing federalism concerns). We should be unwilling to undertake such interference absent the most compelling circumstances. Hesitation is natural and proper in the face of such a request. In this case, however, plaintiffs have alleged the most compelling circumstances imaginable. Given the limited scope of our review of the district judge’s decision, i.e., whether his findings of fact are clearly erroneous and whether his conclusions of law indicate an abuse if discretion, I do not believe that the preliminary injunction should be overturned. If plaintiffs are correct and there is a white supremacist cell operating with official knowledge out of the Lynwood sheriff’s department, and these shootings, tortures, beatings, harassment, and slurs did in fact take place, then there can be no doubt that the preliminary injunction entered is fully justified. Defendants claim that these allegations are lies presented by disreputable gang members at war with authority, and gullibly reiterated by outside lawyers and the press. It is not the role of this tribunal to second guess a provisional determination as to this conflict made by the court below.
In my view, the preliminary injunction is proper and should stand, after modification on remand as described above. As noted in Zepeda, this ruling would not serve to indicate, in any way, the position this court would take after the development of a full record. 753 F.2d at 724.

. The injunction commands that the entire Los Angeles Sheriff's Department follow its own policies and guidelines regarding the use of force and conduct of searches and submit to the Court in camera copies of reports alleging the use of excessive force that the Department collects monthly.

. The district court specifically found that "there is a direct link between departmental policy makers, who tacitly authorized deputies’ unconstitutional behavior, and the injuries suffered by the plaintiffs.” Findings of Fact, f 9.

. There is simply no comparison between the beatings and harassment that may continue to be suffered by the plaintiffs and the "inconvenience” defendants will face in following policies that defendants themselves adopted and that they are already obliged to follow.

. While a preliminary injunction was entered by the district court in one of the cases comprising what became Rizzo, which injunction "re-strainjed] the police from violating the constitutional rights of citizens,” Council of Organizations on Philadelphia Police Accountability v. Rizzo, 357 F.Supp. 1289, 1319 (E.D.Pa.1973), that preliminary injunction apparently was not the subject of further litigation.